CASE No. 1134.

## HOGG v. PINCKNEY.

1. In action for damages for malicious arrest, under bail process, upon allegations of fraud, the plaintiff should allege and prove the absence of probable cause, and, failing to do so, the complaint might properly be dismissed on demurrer orally taken at the trial; but such demurrer having been overruled and testimony upon the question of probable cause freely admitted, and a verdict rendered for plaintiff, this court, on appeal, will not disturb the judgment.

2. The existence or the want of probable cause in such case, is a mixed question of law and fact.

3. While the plaintiff should allege, in his complaint, that the order of arrest had been vacated before the commencement of his action, it was not necessary that he should also allege that the action itself, in which the arrest was made, had been ended.

4. A non-suit is only proper when there is no evidence whatever to support the material allegations of the complaint. If there is any evidence at all before the jury upon a fact at issue, the questions of law bearing upon such fact should be raised by requests to charge.

5. In actions for malicious arrest, it is not necessary (as in actions for malicious prosecutions) to prove express malice, or malice in fact. Malice in such cases defined.

6. It is not necessary, in an action like this, to prove actual damage to the party arrested; deprivation of liberty, and injury to reputation, feelings and person, will support a verdict for the plaintiff.

7. There was no error in the charge, that the jury might infer malice from the want of probable cause.

8. Upon the question of probable cause, the judge properly left to the jury the facts involved in that question.

9. In this trial, so much of the former record as proved the arrest and discharge was proper evidence; the remainder was irrelevant.

10. That the party who procured the arrest, acted under the advice of counsel, is a fact to be considered by the jury, but does not, of itself, shield him from all responsibility.

11. The judge charged the jury that if they, as reasonable men, under the circumstances *proved*, would have acted as the defendants did, then they might conclude the defendants had reasonable cause for their action, but, in view of the testimony, if the jury would not have acted as the defendants did, then the jury might conclude that the defendants did not have probable cause. This was erroneous, in that it did not confine the jury to the facts and circumstances which surrounded the defendants at the time they acted in procuring the arrest. And for this error a new trial was granted.

---

Before THOMSON, J., Barnwell, September, 1880.

Action by Thomas F. Hogg against B. G. Pinckney and R. Q. Pinckney, commenced August 5th, 1879, in Barnwell county, then transferred on defendants' demand to Charleston county, where they resided, and afterwards changed to Barnwell, by order of the judge, on account of the convenience of witnesses.

The facts are these: In February, 1877, the defendants here were doing business together in Charleston, under the firm name of Pinckney Brothers, and were engaged in selling a certain brand of fertilizers. Dr. Hopson Pinckney, as their agent, sold, at that time, to the defendant, five tons of this fertilizer, to be paid for in the next November, by the shipment of five bales of cotton. The cotton not being shipped, or other payment made for this fertilizer, the said Pinckney Brothers, in January, 1879, commenced an action against T. F. Hogg, in Barnwell, and, at the same time, made affidavit to the following effect: That these five tons of fertilizer were shipped upon the faith of Hogg's promise to give a lien upon his entire crop to secure the payment of their account for the fertilizers and cash advanced for freight, &c., without which promise the goods would not have been furnished, and that, although Hogg had been repeatedly requested to give the promised lien, he had failed and refused to do so, and had never paid for the goods; and that the defendant was guilty of fraud in contracting the debt for which this action is brought. Upon this affidavit, the clerk of court

issued a warrant for arrest and bail. Hogg was arrested at his home, in the county, by the sheriff. Hogg offered a surety, to whom the sheriff, with his prisoner, went, but this surety declined to justify. Hogg then mentioned other names, whom the sheriff refused to accept, and finally offered a person seven miles distant, to whose house they rode together, and, upon his signature being affixed to the bond, Hogg was released. Soon afterwards, in Barnwell, C. H., the defendant, Hogg, was told by the sheriff that he had learned that two sureties were necessary to a bail bond, and that Hogg must procure another surety, which Hogg then and there did. Hogg afterwards moved before Judge Hudson for an order vacating the order for bail. At the hearing of this motion, affidavit of Dr. Hopson Pinckney was read, which stated that the contract was as set forth in the affidavit for arrest; that five bales of middling cotton of 500 pounds weight each were to be delivered by Hogg at the nearest depot, in the fall of 1877, and that this contract was to be secured by a lien on his entire crop so soon as Hogg received the fertilizers; that a lien was sent to one Garvin for Hogg to execute, but that he had not executed it. Plaintiff's affidavit declared that Hogg had not executed the lien, shipped the cotton or made any payment on the account.

Affidavits submitted by Hogg, and in his behalf, were to the effect that the cotton to be shipped was not *middling*, but such as was made; that a lien was to be given on only five bales of cotton, and not on the entire crop; that the lien sent to Garvin was a lien upon the entire crop, and Garvin, knowing that the contract was for a limited lien, and other parties who had made similar contracts, having, on that account, refused to sign similar liens, *had never presented this lien to Hogg nor told him of it.* There was also a conflict in the affidavits upon another point: Dr. Pinckney swore that in the fall, Hogg said he was pushed for money to complete a gin-house which he was then building, and Pinckney told him to finish his gin-house and then pay the debt. Hogg and others swore that Dr. Pinckney was told by Hogg that a debt had unexpectedly been pressed, which, if not paid, would cause him to lose his land, and that he could

not then pay both debts, whereupon Pinckney told Hogg to pay for his land and " we will wait on you."

Upon these affidavits, Judge Hudson granted the order prayed for, and set aside the order of arrest, upon the ground that the only fraud alleged was in the failure to give the lien, whereas, the lien, if given according to the contract, would have been worthless as a security, as the goods were delivered before the time fixed for the lien to be signed; and, moreover, there was no testimony to show that the lien was ever presented to Hogg, and there was testimony to the contrary.

Thereupon this action was commenced, and the testimony at the trial was substantially as above stated.

The presiding judge charged the jury that to entitle the plaintiff to recover, malice on the part of the defendants and the want of probable cause for the arrest must both concur, but that it was not necessary to prove express malice and they could infer it from the want of probable cause. That the material points for them to consider was whether the plaintiff, at the time he agreed to give the lien to defendants, had no intention of giving the same, and that if they found he had no such intention it would go far to show probable cause for the arrest; but on the other hand, if they found that at the time he did intend to give it, it would go far to show want of probable cause. That this action was for damages, and the jury were not limited to the proof of special or actual damage shown in the case, which was *not* necessary for a recovery. That the jury could find as damages to the sum claimed in the complaint. They were warned, however, if they found for the plaintiff not to permit their feelings to carry them away, but, taking all the facts into consideration, to give a just compensation for the injury sustained by the plaintiff, of which they were the judges. That evidence was intended to assail or substantiate the statement contained in the affidavit and complaint. If the evidence disproves these statements, then, of course, the probable cause is overthrown. If, on the contrary, the evidence supports these statements, or pointedly increases their strength, the probable cause is sustained. That if the jury, as reasonable men, under the circumstances proved, would have acted as the defendants

did, then the jury might conclude the defendants had probable cause for their action, but in view of the testimony, if the jury would not have acted as the defendants, then the jury might conclude the defendants did not have probable cause.

Defendants requested the court to charge, that the plaintiff could not recover unless he showed that the defendants acted in malice. The court said, I charge you that, gentlemen; but by malice, I do not mean an evil intent, but a gross indifference to the rights of others.

The court also failed to charge the jury as to the effect of the advice of counsel, saying not a word to them about it, although it was urged in the argument. But there was no special request to charge on this point.

The jury found for the plaintiff $1,000.

Defendants moved for a new trial on the minutes upon all the grounds contained in the notice of appeal that relate to the motion for a new trial before the Supreme Court, and his Honor overruled the motion.

The defendants appealed upon the several grounds considered in the opinion of this court; but it will not be amiss to give the full text of the last five exceptions to the judge's charge. They were as follows:

5. Because his Honor erred in instructing the jury that, if they would have acted as defendants did, they should find for defendants, otherwise they should find for the plaintiff.

6. Because his Honor erred in instructing the jury that it was not necessary for the plaintiff to prove actual damage, and that they could find any sum they thought proper, not exceeding $5,000.

7. Because his Honor erred in allowing a partial record of the cause, wherein the plaintiff was arrested, to be submitted to the jury, against the protest of defendants; the defendants were entitled to have the verdict in said cause before the jury, and this was withheld from them.

8. Because his Honor should have instructed the jury that if defendants acted under the advice of counsel in arresting the plaintiff, after a full and fair statement of the case, they were not responsible, and plaintiff could not recover.

9. Because the verdict is outrageous and excessive, based upon the erroneous charge of his Honor that the jury could give vindictive damages.

In explanation of the seventh exception, it should be stated that, when this record was offered in evidence, the complaint in *Pinckney Bros.* v. *Hogg* was in the hands of another jury in their room, and the verdict was not yet published—that case having been tried next before this case.

*Mr. J. R. Bellinger,* for appellant.

*Messrs. Robt. Aldrich* and *H. M. Thompson,* contra.

January 13th, 1882.   The opinion of the court was delivered by

SIMPSON, C. J.   This is an action for malicious arrest, under civil process, for an alleged fraud in contracting a debt.

The complaint does not allege in terms that the arrest was without probable cause, nor does it allege that the suit wherein the arrest was made had been ended before the commencement of this action.   The defendants below—appellants here—demurred orally at the trial, and moved the presiding judge to dismiss the complaint on the ground that it failed to state facts sufficient to constitute a cause of action, being defective in the two particulars above mentioned.   This motion was overruled below.   It is now renewed here.   So that the first question for our consideration is this :   Is it necessary, in an action for an alleged malicious arrest on the ground of fraud in contracting a debt, that the plaintiff should allege in his complaint, in terms, that the arrest was made without probable cause, and, also, that the action in which the arrest was made had ended ?

It is well understood that all the facts which the plaintiff is required to prove so as to entitle him in law to a verdict, should be alleged in the complaint, either originally or subsequently by amendment actually or impliedly made.   This grows out of that first general rule of evidence laid down by Mr. Greenleaf, that the testimony must correspond with the allegations and be confined to the points in issue.   It is not necessary, however, to

allege conclusions of law in a complaint. In fact this, under the code, is considered not only unnecessary but bad pleading. *Pom. Rem.* § 517 *et seq.*

Now the questions here are: Is the want of probable cause in an arrest for fraud in a civil action a necessary element to plaintiff's recovery when he sues for such arrest, and, if so, is it a question of fact for the jury, to be alleged in the complaint, or is it a question of law for the court, arising upon the facts alleged?

It has often been held that in an action for malicious prosecution, the term prosecution being used in its technical sense, to wit, prosecution for crimes, &c., that the want of probable cause is a necessary element to plaintiff's recovery, and must be alleged and proved. And, as appears from the old forms found in *Chitty,* the practice prevailed in the old common law mode of pleading, of inserting in the declaration, in terms, that the prosecution was without reasonable or probable cause, as the proper mode of making this allegation, and in the absence of this the pleading was fatally defective. The reasons for the necessity of such an allegation, and especially for the proof of it in actions for criminal prosecutions, originated in considerations of public policy. It is in the interest of good order, of the public peace and quiet, and good government, that criminals should be brought to justice, and to this end it has been held that whatever may be the motive of the prosecutor in a criminal action, he is free from danger if there be a probable cause for the accusation which he makes; and, as a greater protection to him, he is not required to prove the presence of probable cause by way of defense, but the plaintiff must show its absence as a part of his cause of action, and to do this an averment of the want of probable cause has ever been held necessary in such actions. *Inclorn* v. *Berry,* 1 *Cowp.* 204; *Add. Torts* §§ 852, 853; *Given* v. *Webb,* 7 *Rob.* 65; *Chit. Pl.* 261, *note;* 1 *Greenl. Evid.* 78, § 449.

The consideration of public policy referred to above as applicable to criminal prosecutions, may not apply as fully to arrests under civil process as to criminal, but yet it has been also held that arrests in suits at law are not actionable where probable cause exists, and that it is equally as necessary in actions for

malicious arrest as in actions for criminal prosecutions, for the plaintiff to allege and prove the want of probable cause. *Chit. Pl.* 261, *note.* 2 *Greenl. Evid.* § 449, treats of malicious arrests as, governed by the same principles as malicious prosecutions. See *Cooper* v. *Halbert,* 2 *McM.* 419 ; *Goslin* v. *Wilcock,* 2 *Wils.* 307 ; *Ford* v. *Kelsey & Deas,* 4 *Rich.* 365.

This was the doctrine under the old law when parties could be held to bail for causes other than fraud in contracting a debt. It was founded upon the principle that every man has the right to appeal to the courts when he thinks he has been injured, and, as was said by Lord Campbell, in *Goslin* v. *Wilcock, supra,* the courts will be cautious in discouraging men from suing ; and we can see no reason, since imprisonment for debt has been abolished and arrests in civil matters have been confined to fraud and to that alone, why this doctrine should not still apply, and why parties who arrest others for fraud in contracting a debt should not be exempt from action until the absence of probable cause for such arrest is alleged and proved.

Is it necessary, however, that the want of probable cause should be alleged in terms? Under the common law pleadings, as we have already stated, such was the practice. But under that mode of pleading the line between conclusions of law and the statement of fact was not very nicely drawn. As will be remembered, the old declaration usually embraced both. The code, however, has made a change in this respect, (§ 165, subd. 2,) providing that a plain and concise statement of the facts constituting a cause of action, without unnecessary repetition, is all that is required, conclusions of law being entirely excluded. Since the adoption of the code, then, it may be contended that the old forms are unimportant as precedents ; that the code in its substance must govern, and as that requires an allegation of facts simply, it is not proper to embrace in the complaint conclusions of law. This is sound doctrine, but does it apply in cases of this kind? This must depend upon whether the *absence* of probable cause is a question of fact or a question of law.

Upon reading the cases already cited, it will be seen that *probable cause* itself is a mixed question of law and fact, involving both, the question of law being whether the facts proved

constitute probable cause, and the question of fact whether the facts alleged are true—the first being a question for the court and the second for the jury. But whether this probable cause, as thus understood, is absent or present in a particular case, is a question of fact dependent upon the circumstances of each case ; and being a question of fact and a necessary fact to plaintiff's recovery in actions both for malicious prosecution and malicious arrest, as we have seen from the authorities already cited, it must be alleged in each. There being no allegation of that character in the complaint in this case, in our opinion it was obnoxious to the oral demurrer interposed below by the appellant, and it would not have been error for the judge below to have dismissed it on that account. But this was not done, and at the trial testimony on the question of probable cause, both for and against, was fully admitted. In fact the case turned upon this as one of the facts involved. Now the code is quite liberal as to amendments and its spirit is averse to non-suits and dismissals upon technical objections, especially where it is manifest that no advantage is taken of either party by surprise.

In accordance with this spirit it has been held that amendments may be made either during the trial or after verdict, so as to make the complaint conform to the testimony received without objection. In *Cade* v. *Perrin*, 14 *S. C.* 1, Willard, C. J., said : " That was a case under the code for not restraining the verdict to the issue framed in the pleadings, and that it properly went to the jury upon the evidence, with or without previous amendment of the pleadings, and it was decided in that case that when it appears upon the trial of a case, by evidence admitted without objection, or properly admitted under the pleadings, that the plaintiff is entitled to a remedy upon the case exhibited, he cannot be turned out of court merely because the cause of action set forth in his complaint does not conform to such state of proof." To the same effect was *Porcelain Man. Co.* v. *Thew*, 5 *S. C.* 5. In *Morton* v. *Pinckney*, 8 *Bosw.* 135, it was held that an objection at the trial that a complaint does not state facts sufficient to constitute a cause of action, is not available on appeal from the judgment where the defect is supplied by the evidence at the trial. Under these authorities, in

view of the testimony introduced in this case, the motion to dismiss the complaint, renewed here, must be refused.

Was the complaint defective because it did not state that the action in which the arrest had been made had ended before the commencement of plaintiff's action for this arrest? We think not.

· It is true that in actions for malicious prosecution the complaint must allege that the prosecution was at an end, but this is because in criminal prosecutions the very question of probable cause is to some extent involved—so much so, at least, that it cannot be determined certainly, until the prosecution is ended, whether or not probable cause existed for the proceeding. If an action was permitted for damages before the prosecution terminated, either by acquittal, *nol. pros.*, discharge, or in some other way, it could not be known but that the accused might be convicted, so that it is necessary in such case for the plaintiff to await the result of the prosecution before he becomes entitled to his action. But this doctrine does not apply in a case of the kind now before the court. Here an action was brought by the appellants against the respondent for debt; the cause of action was for cash advanced and goods sold. As an incident to this action the respondent was held to bail on an allegation of fraud in contracting this debt. The alleged fraud was no part of the debt, nor would the adjudication of the question whether or not the appellants were entitled to recovery in the action which they instituted, throw any light on the fraudulent conduct of respondent. That was a separate and distinct matter, and not involved necessarily in the action itself, and we can see no reason why plaintiff's right to action should depend on the termination of that suit.

It was, perhaps, necessary that plaintiff should allege that he had been discharged from the arrest. This fact he did allege in the third paragraph of the complaint. This, we think, was sufficient. See the well-considered case of *Fortman* v. *Rattier & Hoenig*, 8 *Ohio St.* 548. That was a case for maliciously and without probable cause issuing an attachment in aid of a civil action, in which it was held that "where the trial and judgment, in such former suit does not necessarily involve the question of

probable cause for issuing the attachment, it is not necessary that the plaintiff should aver or prove the termination of such former suit. Neither, in such case, was it necessary to aver or prove upon the trial that the attachment complained of had been discharged or otherwise terminated adversely to the claim of the party employing its aid before suit brought." In the case now before the court the arrest complained of was in aid of the civil action for debt, and in many respects similar to the case of *Fortman* v. *Rattier & Hoenig, supra.* We think there is no ground to dismiss the complaint on this ground.

At the close of plaintiff's testimony below, the appellants, defendants, moved for a non-suit on the following grounds: 1. Because no express malice on the part of the defendants being proved, the action cannot be sustained, and his Honor erred in holding that it was not necessary to prove express malice. 2. Because no actual damage to the plaintiff was proved, without which the action cannot be sustained, and his Honor erred in so holding. 3. Because the proof was abundant that the defendants did not act maliciously and without probable cause, but, on the contrary, the evidence rebutted malice and showed probable cause.

This motion was overruled below and it is renewed here. A non-suit is only proper when there is no evidence to support the material allegations of the complaint, and whether or not there is an absence of all testimony is always a question for the judge; whether the evidence is sufficient is for the jury. The two first grounds for the motion below raised questions of law, viz.: 1. Whether it was necessary to prove express malice; and, 2. Whether it was necessary to prove actual damage. These questions should have been raised strictly by request to charge and not by motion for non-suit. The judge, however, it is alleged, ruled adversely to appellants upon these questions, and, under this ruling, it made no difference whether express malice or actual damage was proved or not, so far as the motion for non-suit is concerned.

Was there error in his holding that it was not essential that either express malice or actual damage should be proved? The term " malice," as applied to torts, does not necessarily mean

that which must proceed from a spiteful, malignant or revengeful disposition, but a conduct injurious to another, though proceeding from an ill-regulated mind not sufficiently cautious before it occasions an injury to another. 2 *Bouv. Dic.* 98. "Malice," says Lord Campbell, C. J., (quoted in *Broom Com.* 756,) "in the legal acceptation of the word is not confined to a personal spite against individuals, but consists in a conscious violation of law to the prejudice of another. It is of two kinds—malice in law and malice of fact; malice in law being a wrongful act done intentionally without just cause or excuse ; malice in fact being a personal malice against an individual, or a general disregard of the right consideration due to all mankind, which may not be directed against any one, but is nevertheless productive of injury to the complainant." *Broom Com.* 736.

Malice is understood to be express when the testimony shows an express intent to commit the illegal injury complained of with the view to injure another. It is implied where it shows a disregard of the consequences of the injurious act, without reference to any special injury which he may inflict on another. Express malice is expended in the commission of an intended injury ; implied malice, in doing some illegal act for one's own gratification or purposes, without regard to the rights of others or the injury he may inflict on another.

In *Willis* v. *Knox*, 5 *S. C.* 476, it was held that it was necessary to prove both express malice and actual damage, and in the absence of such proof a new trial was granted, and *Frierson* v. *Hewitt*, 2 *Hill* 499, was relied on to support this principle. Upon an examination of *Frierson* v. *Hewitt* it will be seen that although Judge O'Neall, in delivering the opinion of the court, did say that express malice was necessary in such cases, yet that question was not involved in the case and this remark was *obiter*. The case of *Frierson* v. *Hewitt* involved simply the question whether an action for malicious prosecution would lie where the indictment failed to charge a crime, the court holding in such case that such action would not lie. This was the only question raised or decided. The case of *Willis* v. *Knox* was an action for *malicious prosecution,* as was also the case of *Frierson* v. *Hewitt.*

In actions of that kind there may be good reasons founded on

public policy why express malice, in the sense of intent to injure the plaintiff, should be proved before the prosecutor should be held accountable. As has been already said, the public peace and safety require the punishment of law-breakers, and it may be that prosecutors should be held harmless until it appears that they have attempted to subordinate the courts to the gratification of their malignant desire to injure the accused, and for no other purpose. In the case of *Ford* v. *Kelsey & Deas,* 4 *Rich.* 372, decided after *Frierson* v. *Hewitt,* where an action had been brought for malicious arrest under bail process, Judge O'Neall, who also delivered the opinion in *Frierson* v. *Hewitt,* reserved the question whether express malice was necessary, saying: "Without adverting to the necessity of showing express malice to sustain a case of this kind, about which no opinion is now intended to be given on the part of the court, it is enough to sustain the non-suit if the plaintiff failed to show that the defendant held him to bail without any reasonable or probable cause." We do not find any authority for the position that in an action for malicious arrest, *express malice* must be proved, and we do not think that the principle which requires it in actions for malicious prosecution applies to actions for malicious arrest.

Was it necessary to prove actual damages? Mr. Greenleaf, (Vol. 2, § 456,) in discussing actions for malicious prosecutions and malicious arrest, says: "As to the damage, whether the plaintiff has been prosecuted by indictment, or by civil proceedings, the principle of assessing damages is the same, and he should be entitled to indemnity for the peril occasioned to him in regard to his life or liberty, for the injury to his reputation, his feelings and his person, and for all expenses. And if no evidence is given of any particular damages, yet the jury are not, therefore, obliged to find nominal damages only." Referring to *Tripp* v. *Thomas,* 3 *B. & C.* 427, Judge O'Neall, in *Frierson* v. *Hewitt,* says: "In such cases you must not only show want of probable cause, but also express malice (this was a case of malicious prosecution) and actual injury or loss, as *deprivation of liberty* and money paid in defense." These authorities show that it is not necessary to prove actual damages in the sense of the objection made. See case of *Rowe* v. *Moses,* 9 *Rich.* 426.

As to the third ground for non-suit, there was, certainly, some testimony, and enough, as it seems, for the jury to render a very heavy verdict for the plaintiff. There was no error in the judge's refusing the non-suit below, and there is no ground for this court to grant the motion now.

The appellant excepts to the charge of the presiding judge upon several grounds, which will now be considered. As to the first exception, there seems to have been a misconception on the part of the appellant. The judge, in settling the case, corrects this mistake, which renders it unnecessary to consider this exception.

2. Because his Honor charged the jury that they could infer malice from the want of probable cause. The ruling of the judge is sustained by *Horn* v. *Boon*, 3 *Strobh.* 309.

3. Appellant objects because the judge left the question of probable cause to the jury as a question of fact. We do not understand, from the charge of the judge, that he left this question to the jury as a question of fact; on the contrary, he said "that the evidence in the case was intended to assail or substantiate the statement contained in the affidavit and the complaint. If the evidence disproves these statements, then, of course, probable cause is overthrown. If, on the other hand, the evidence supports, * * then the probable cause is sustained." This was, in effect, saying to the jury that, in law, whether or not probable cause existed depended upon the truth of the facts alleged in the complaint, on the one hand, and the affidavit on the other, and that it was for the jury to determine the truth of these allegations respectively. In this he decided the question of law himself, and left the facts to the jury. This exception cannot be sustained.

4. "Because, though his Honor charged the jury that malice was necessary to sustain the action, yet he erred in saying that by malice was not meant an evil intent, but a gross indifference to the rights of others." This, and the sixth exception, as to actual damages, raises the question of express malice and actual damages already discussed above, and they need no further consideration.

The seventh exception as to admission of a portion of the

record in evidence is untenable. The arrest and discharge were all that plaintiff desired to prove. That portion of the record which proved these facts he introduced; the remainder was wholly irrelevant.

As to the eighth, there is nothing in the record which shows that the judge was requested to charge upon the advice given to appellant by his counsel, and, therefore, this exception can not properly be considered; but even if it was before us, we do not think that the judge could have charged as desired where defendant acted under the advice of counsel. That is a fact which, if it exists, should always go to the jury, as it did in this case, with the other facts and circumstances bearing upon the questions of malice and want of probable cause, but it could not, in itself, shield the party from all responsibility.

The fifth exception has been reserved for the last, because, upon this, a new trial must be ordered. The judge seems to have charged the jury that if they, as reasonable men, under the circumstances *proved,* would have acted as the defendants did, then they might conclude the defendants had probable cause for their action; but, in view of the testimony, if the jury would not have acted as the defendants, then the jury might conclude the defendants did not have probable cause. If the judge had confined the jury to the facts and circumstances which surrounded the defendants at the time they acted, then his charge would not have been objectionable. But he went further than this and permitted them to consider all the facts developed on the trial, whether they were present before the defendant at the time of the arrest or not. This, we think, was error.

It may be that the minds of the jury were not influenced by any additional facts elicited at the trial other than those surrounding the defendants when the arrest took place; but we do not know this. Under the charge of the judge, they were at liberty to consider all the testimony offered at the trial bearing upon the question of probable cause, whether known to the defendants at the arrest or not, and their verdict may have been founded, in part at least, upon these subsequent facts. This exception must, therefore, be sustained.

It is the judgment of this court that the judgment of the Cir-

2A

cuit Court be reversed upon the fifth exception and the case be remanded for a new trial, with the privilege, on the part of respondent, to amend his complaint so as to allege distinctly the want of probable or reasonable cause.

McIVER and McGOWAN, A. J.'s, concurred.